**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLY EUGENE PAYNE, | Case No. 1:12-cv-1764-SMS |
| Plaintiff, | ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Billy Eugene Payne ("Plaintiff"), by attorney Cyrus Safa, seeks review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income (SSI) under Title XVI of the Social Security Act.

The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards, and affirms.

I.    **Procedural History**

Plaintiff first applied for benefits in June 14, 2006. The previous ALJ rendered an unfavorable decision on December 27, 2007. In July 2009, Plaintiff filed a second application for SSI. Plaintiff testified before a second ALJ, Christopher Larsen, on June 20, 2011. Larsen rejected Plaintiff's claim on June 29, 2011. The Appeals Council denied review, and Plaintiff filed his complaint in this Court. *See* 42 USC § 405(b)(1). The parties consented to magistrate jurisdiction and have submitted their cross-briefs without oral argument.

II.   **Scope of Review**

Congress has provided a limited scope of review of a decision to deny benefits. First, this Court reviews only the Commissioner's "final decision." 42 U.S.C. § 405(g). Here, because the Appeals Council denied review, that is the ALJ's decision. *Sims v. Apfel*, 530 U.S. 103, 106 (2000); *cf. Brewes v. Comm'r*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (describing limited consideration of Appeals Council's decision "as a practical matter"). Furthermore, this Court reviews only whether this decision applied proper legal standards and made findings supported by substantial evidence. *Bray v. Comm'r*, 554 F.3d 1219, 1222 (9th Cir. 2009). Substantial evidence is more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. Where the record as a whole can support either grant or denial, the Court may not substitute its judgment. *Id*.

## III.   <u>Disability Standard</u>

To be disabled, a claimant must have impairments which foreclose all meaningful employment for at least twelve months. 42 U.S.C. § 1382c(a)(3). To make the disability determination more uniform and efficient, ALJs follow a five-step "sequential evaluation process," stopping once they reach a dispositive finding. 20 C.F.R. §§ 404.1520, 1594(b)(5).

The sequential process begins with a "*de minimis* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996). At steps one and two, the claimant must verify that he is not meaningfully employed and in fact has severe impairments. Once the claimant passes this screening, the remaining steps examine whether he is disabled.

The claimant may prove this in two ways. One way—considered at step three—is to have a condition that is disabling by definition. *See* 20 C.F.R. Pt. 4, Subpt. P, App. 1 (the "listings"). Failing this, he must present evidence of his residual functional capacity ("RFC," the most he can do despite his limitations). The ALJ determines this RFC, then at steps four and five applies this to the world of work. If the claimant's RFC forecloses his past work, and if the Commissioner cannot satisfy her burden to identify a significant number of other jobs that the claimant could learn, then the claimant is disabled.

Where (as here) a claimant has previously been found not disabled by an ALJ, principles of *res judicata* apply to any finding required at any of these steps. *Chavez v. Bowen*, 844 F.2d 691 (9th

Cir.1988), AR 97-4(9); *see Bennett v. Astrue,* 2013 WL 503933 (W.D.Wash. Jan.18, 2013) (absent Circuit guidance, *res judicata* not applied where prior determination lacked ALJ review). Subsequent adjudicators need not reconsider any such finding until the claimant provides new and material evidence showing changed circumstances. *Id.*

**IV.** **Evidence of Record**

**Medical Record – Prior Adjudicated Period (*res judicata*)**

On June 14, 2006, Plaintiff filed his first application for SSI benefits. In December 2006, an MRI of the cervical spine gave the following impression:

> 1. Disc space narrowing at C3-C4, C4-C5, and C5-C6 with peridiscal degenerative bone marrow changes at C5-C6.
> 2. Right paracentral disc herniation at C4-C5 causing extreme deformation of the spinal cord and spinal stenosis.
> 3. Broad-based discosteophytic bulge at C5-C6 causing moderate central canal spinal stenosis.
> AR 346-47.

There was also a lumbar MRI from December 2006. This showed a small extra foraminal disc protrusion on the left at L4-5. AR 77, 346.

**Prior Adjudication**

Plaintiff's first ALJ hearing occurred October 29, 2007. AR 50-70. Plaintiff represented himself. AR 52. He testified that he worked a few days, picking up trash a week before the hearing. AR 55. He testified that he suffered pain in the back and neck that precluded full time work. AR 57-58. The pain was constant, but greater when looking in one direction for an extended amount of time. AR 58-59. He stated that he was on Percocet, Vicodin, and Indomethacin at the first hearing. AR 59. He stopped physical therapy because it was too far for him to travel. AR 59-60. He stated that he could lift and carry 15-20 pounds. AR 61. He stated that he could sit for about thirty minutes at a time, for a total of about three and a half to four hours, and stand for three and a half to four hours in an eight hour workday. AR 62.

ALJ Berry rendered an unfavorable decision on December 27, 2007. AR 71-79. As characterized by ALJ Larsen in his denial of Plaintiff's second (i.e. current) application, ALJ Berry discussed "voluminous records from the Veteran's Administration (VA) ... regarding Mr. Payne's history of routine conservative treatment of degenerative disc disease and bilateral carpal tunnel

syndrome." AR 25. ALJ Larsen characterized the records since this time as indicating that Plaintiff "has continued with pain management as his mode of treatment and some physical therapy." AR 25.

### **Medical Record – Unadjudicated Period (beginning December 27, 2007)**

In February 2008, a cervical spine MRI stated an impression of "disc degenerative changes with spinal canal stenosis at multiple levels." AR 590. The findings included: mild broad-based bulging of the disc with mild spinal canal stenosis at C3-C4, broad based bulging of the disc with central right paracentral protrusion indenting anterior thecal sac, narrowing of bilateral recess, and moderate to marked central spinal canal stenosis at C4-C5, broad based bulging with central herniation indenting the anterior thecal sac, narrowing of bilateral recess, and marked spinal stenosis at C5-C6, and mild broad based bulging of the disc, mild spinal stenosis at C6-C7.

In July 2009, Plaintiff filed the present application for SSI. AR 158.

In August 2009, the VA first prescribed Gabapentin for pain. AR 560. (As the ALJ noted, this contradicts Plaintiffs hearing testimony that he had just started Gabapentin then to wean off morphine. AR 25.)

On October 1, 2009, consultative examiner Theodore Georgis Jr., M.D., examined Mr. Payne. AR 421-425. Dr. Georgis observed normal gait and negative Romberg. AR 432. Dr. Georgis observed no deformity or spasms in the back, and tenderness in the paramedian musculature regions. AR 424. Wrist and hands showed mild to moderate osteoarthritic enlargement of the proximal interphalangeal joints diffusely. Motor strength was normal. Reflexes were 2+/4. *Id.* Dr. Georgis diagnosed chronic low back pain, degenerative disc disease by history, no radiculopathy; and chronic neck pain, degenerative disc disease by history, no myelopathy or radiculopathy. AR 424.

In terms of limitations, Dr. Georgis opined that Plaintiff could stand and walk up to six hours in an eight hour workday, with no sitting limitations. AR 424-425. He could lift/carry 50 pounds occasionally and 25 pounds frequently, and was limited to frequent climbing, balancing, stooping, kneeing, crouching, and crawling. AR 425.

On November 9, 2009, state agency, non-examining physician, E. Wong, M.D., reviewed the file. AR 426-431. Dr. Wong opined that claimant could lift 20 pounds occasionally and ten pounds frequently; sit about six hours in an eight hour workday and stand/walk about six hours in an eight hour workday. AR 427; 432-434. The case analysis noted that, at the time of his previous denial, "[claimant] was [diagnosed] w/ cervical stenosis w/o significant evidence of myelopathy & mild [degenerative] changes of the [lumbar and cervical] spine." AR 433. The case analysis also noted, "Currently, [claimant] has the same allegations in addition to [right] elbow, constant pain in ankles & writs and fingers hurt all the time. [Medical evidence of record] still shows routine conservative [treatment] & no referrals for pain management. ... There does not appear to be a material change in [claimant's] condition from the ALJ's decision." AR 433.

On December 9, 2009, Plaintiff's application was denied initially. AR 95-99. On January 15, 2010, Plaintiff requested reconsideration. AR 100.

On April 12, 2010, cervical spine MRIs and X-rays were obtained for comparison with the "MRI dated 12/21/2006." AR 482. The impression was "degenerative changes of the cervical spine," based on findings of: "straightening of the normal cervical lordosis with reversal of the normal cervical lordosis at C4-C5;" "approximately 2-3mm retrolisthesis of C5 of C6 that persists on the flexion and extension views;" "posterior disc osteophytes at C4-C5;" "anterior osteophytes from C3 through C6;" "moderate disc height loss at C5-C6;" and "bilateral C4-C5 and C5-C6 neural foraminal narrowing." AR 483. On the same date, lumbar radiographs were also prepared for comparison with those from 12/13/2006, and the impression was "no acute radiographic abnormality. Normal alignment. ... minimal endplate spurs at multiple levels ..." AR 484.

On the same date, within these same records, a staff radiologist compared the first set of new radiographs "to the most recent prior cervical spine MRI of 4/12/10." (This is clearly a typo, but it not clear whether comparison was made against the cervical spine MRI from 12/21/2006 or from 02/2008.) The impression was "Increasing Modic type I and II peridiscal degenerative bone marrow changes at C4/5 and to a lesser extent at C5/6," as well as "slight progression of severe degenerative spinal stenosis at C4/5 and C5/6 more severe at C5/6." AR 480. The radiologist also made comparison of the second set of new radiographs "to the most recent prior lumbosacral MRI

of 12/21/06." The impression was "left lateral disk protrusion at L4/5 has decreased in extent; adjacent residual arcuate annular degeneration is revealed." Also, "The remainder of the visualized structures of the lumbosacral spine reveal no significant change and no evidence for new pathology allowing for slight differences in technique between the present and comparison study." AR 481.

Plaintiff had requested these studies to determine if his condition had worsened to obtain a neurosurgery consult for a possible operation. AR 494. When VA staff explained to him the results and that he was stable, Plaintiff stated that he did not want a neurosurgery consult. AR 493.

On May 6, 2010, state agency, non-examining physician, K. Wahl, M.D., reviewed the file, noted the 4/10 radiographs, and affirmed the light residual functional capacity, on the grounds that "the magnitude of the alleged physical limitations is not significantly increased by the objective physical findings or laboratory data" and "no significant increased functional physical limitations are documented." AR 551-552.

On May 7, 2010, Plaintiff's application was denied on reconsideration. AR 101-106.

In July 2010, records from the VA confirmed Plaintiff's degenerative disc disease upon review of the MRI and x-ray reports, but noted no significant radiculopathy. AR 664.

Nerve conduction studies (electromyograms) of the right arm and leg were normal in September 2010. AR 627. Plaintiff received injections on September 27, 2010, and underwent L3, 4 and 5 radiofrequency one month later. AR 632, 642.

On January 28, 2011, Savita Nallapa, M.D., completed a physical residual functional capacity questionnaire. AR 592-596. Dr. Nallapa diagnosed cervical disk disease with moderate spinal stenosis, lumbar disk disease with L4-L5 disk degeneration, and collar fracture from 2006, status post, open reduction internal fixation. AR 592. His prognosis was "fair." Dr. Nallapa reported that his pain appeared consistent with intermittent radiculopathy. AR 592. Dr. Nallapa reported objective signs to include limited extension.

In terms of limitations, Dr. Nallapa opined that Plaintiff could walk half a block, sit and stand for 15 minutes at a time, sit less than two hours total in an eight hour day, and stand or walk for less than two hours in an eight hour day. He would need to include periods of walking in an eight hour day at 15 minute intervals of ten minutes each, and would need to shift at will from

sitting, standing, and walking. He would require unscheduled breaks every 20 minutes for ten to 15 minutes, and could occasionally lift less than ten pounds. He was limited in repetitive reaching, handling, and fingering to less than 5% with his right side and 20% with his left side. He could never bend or twist at the waste, but could perform other postural movements occasionally, with environmental restrictions. AR 594-596.

At a physical therapy follow-up on February 9, 2011, Plaintiff reported a decrease in pain from 6/10 to 3/10. AR 634.

**Plaintiff's Testimony**

Plaintiff testified before the ALJ on June 20, 2011. AR 21. Plaintiff appeared and was represented by counsel at a hearing on June 20, 2011 (AR 34). Plaintiff testified that he had a GED and had last worked in February or March of 2008 doing day labor (AR 39). With respect to symptoms, Plaintiff stated that he experienced pain in his neck and lower back (AR 40). Plaintiff stated that he could hold his head straight for only two or three minutes at a time, that it was difficult for him to look down, and that it was even more difficult for him to look up (AR 40-41). Plaintiff stated that he could stand for only five to ten minutes and could sit for only 15 to 20 minutes at a time (AR 41). When asked whether he could alternate sitting and standing, Plaintiff stated that he could not because he said it was "just too painful" (AR 41). With respect to medications, Plaintiff stated that he took morphine, Vicodin, gabapentin and cyclobenzaprine every day (AR 43). Plaintiff said these pain medications did not relieve the pain (AR 43).

**Testimony of Vocational Expert**

At the hearing, Cheryl Chandler, a vocational expert, described how various mental and physical limitations would impact Plaintiff's ability to work. *See* 20 C.F.R. §404.1560. First, she considered whether a person with these limitations and Plaintiff's work experience could return to that past work. If not, she further considered whether that person, given Plaintiff's age and education, could adjust to new work. In making this analysis, she characterized Plaintiff's past work as Construction Worker II (heavy/very heavy, 2).[1]

---

[1] In the parenthetical, the strength rating captures how much exertion the job requires and whether this is occasional (up to a third of a day), frequent (two thirds), or constant. The Specific Vocational Preparation number ranks, from one to nine, how long it takes to learn the job. Dictionary of Occupational Titles (4th ed.1991) Appendix C.

The parties asked Ms. Chandler to consider a single hypothetical set of limitations. The person could lift and carry less than 10 pounds, stand and walk two hours and sit two hours in an eight-hour day, and "other restrictions." This person could not perform Plaintiff's past work, nor any other work. AR 48.

## V.   The ALJ's Decision

The ALJ followed the five-step sequential evaluation process outlined above. At steps one and two, the ALJ found that Plaintiff's claim was not clearly meritless: he had not worked since the alleged date of disability and he had severe impairments capable of lasting twelve months. These included degenerative disc disease and bilateral carpal tunnel syndrome.

However, Plaintiff could not prove he was disabled. At step three, his condition did not meet or equal a "listing," and at steps four and five his RFC and vocational profile did not foreclose meaningful work. Specifically, because Plaintiff could not demonstrate "changed circumstances" relating to the prior ALJ's RFC finding, the *Chavez* rule dictated that his RFC corresponded to the RFC in the 2007 ALJ decision: Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, and sit, stand or walk six hours in an eight-hour day. Pursuant to the medical-vocational guidelines and the prior ALJ's finding, this RFC rendered Plaintiff "not disabled."

On appeal, Plaintiff argues that the ALJ erred in finding no "changed circumstances" with respect to the severity of Plaintiff's impairments. In a related point, Plaintiff argues that the ALJ erred by rejecting Dr. Nallapa's opinion.

## VI.   Discussion

### The ALJ Gave Sufficient Reasons to Reject the Opinion of Dr. Nallapa

Plaintiff asserts that the ALJ gave insufficient reasons to reject the medical opinion of Dr. Nallapa. The ALJ wrote,

> Ordinarily, I must give controlling weight to the opinion of a treating source who is a specialist in the area of medical impairment in question. However this rule is not absolute. ... I give little weight to Dr. Nallapa's opinion because the treatment history is limited to only two visits, and the most recent x-rays and MRIs ... do not support the opinion. It was Dr. Nallapa, who after the review of the MRI in April 2010, reported Mr. Payne was stable in comparison to the studies in 2006. ... This opinion is not consistent with the overall evidence of record and in particular, the opinion of the consultative examiner Dr. Georgis, with both doctors at far extremes in comparison to Judge Berry's decision and the opinions of the state-agency doctors.

To reject the opinion of a treating physician, the ALJ must consider (1) the examining relationship; (2) the treatment relationship, including (a) the length of the treatment relationship or frequency of examination and the (b) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors that support or contradict a medical opinion. 20 C.F.R. § 404.1527(d). As to supportability, a medical opinion may be disregarded to the extent it is premised on discredited complaints. *Morgan*, 169 F.3d at 602.

In general, greater weight is accorded to the opinion of a treating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen,* 812 F.2d 1226, 1230 (9th Cir.1987). However, a treating physician's special knowledge does not merely derive from the length of the relationship, and the regulations reflect this fact. Under 20 C.F.R. § 404.1527(d), the ALJ should also consider the frequency of examination and the nature or extent of the relationship. Here, the ALJ noted that Dr. Nallapa's treating history was limited to two visits. Thus, the ALJ properly found that Dr. Nallapa less compelling as a treating source.

Furthermore, it is error to give an opinion controlling weight simply because it is the opinion of a treating source, if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record. SSR 96-2p. Here, Dr. Nallapa's opinion was contradicted by the opinions of Dr. Georgis and the state agency physicians.

The ALJ also relied upon the remaining factors discussed in 20 C.F.R. § 404.1527(d), including supportability and consistency with the medical record. Specifically, the ALJ agreed with the state agency doctor and found that the most recent x-rays and MRIs did not represent a change in severity, as will be discussed below.

**The ALJ Properly Found No Increased Severity**

The ALJ reasonably found that Plaintiff did not rebut the presumption of continuing non-disability. Plaintiff relies on the MRIs taken in April 2010, but the ALJ properly found that Plaintiff's "physical condition has not deteriorated to any significant degree since [the prior ALJ's] decision" (AR 22).

As mentioned, a radiologist made a comparison between the 2006 and 2010 lumbar MRIs and observed: "left lateral disk protrusion at L4/5 has decreased in extent; adjacent residual arcuate annular degeneration is revealed." Also, "The remainder of the visualized structures of the lumbosacral spine reveal no significant change and no evidence for new pathology allowing for slight differences in technique between the present and comparison study." AR 481. The ALJ acknowledged that this represented improvement in Plaintiff's condition.

The radiologist also claimed to make a comparison of a prior cervical MRI (identity uncertain) versus the 2010 cervical MRIs and observed: "Increasing Modic type I and II peridiscal degenerative bone marrow changes at C4/5 and to a lesser extent at C5/6," as well as "slight progression of severe degenerative spinal stenosis at C4/5 and C5/6 more severe at C5/6." AR 480. Based on these findings, VA staff then advised Plaintiff that he was "stable," and Plaintiff, who obtained the imaging to determine whether he should seek surgery, declined a neurosurgical consult. The ALJ did not find these findings and evidence to be inconsistent with the improvement previously noted. The ALJ also considered the normal nerve conduction and electromyography studies in September 2010, as well as Plaintiff's lack of radiculopathy, plexopathy, or neuropathy. The ALJ also cited additional evidence indicating that Plaintiff did not have increased pain.

Even if the ALJ erred in applying *Chavez*, that error was harmless, since the ALJ also made clear that he made a full assessment of Plaintiff's RFC, one which was "supported by the medical record, opinion evidence, and overall evidence of record." The ALJ weighed each medical opinion and cited the medical record to support the conclusion that Plaintiff "has not worsened, and showed improvement on a disc protrusion, although not sufficiently to warrant a change in his residual functional capacity assessment." AR 27.

///

///

1

**VII.**    **Conclusion**

2          The ALJ applied appropriate legal standards and substantial credible evidence supported the

3  ALJ's determination that Plaintiff was not disabled. Accordingly, the Court hereby AFFIRMS the

4  agency's denial of benefits. The Clerk of Court is directed to enter judgment for Defendant Carolyn

5  W. Colvin, Acting Commissioner of Social Security.

6
   IT IS SO ORDERED.
7

8     Dated:   **January 30, 2014**              **/s/ Sandra M. Snyder**
                                          UNITED STATES MAGISTRATE JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28